The United States Court of Appeals for the Eleventh Circuit is now open for the hearing. The court is adjourned. Thank you. Please be seated. Good afternoon. Welcome to the Eleventh Circuit. Today we have one case before us, the case of O'Kelley v. Warden. And we'll hear first from counsel for Mr. O'Kelley. Good afternoon, Your Honors. Danielle Cayambe on behalf of Petitioner Appellant Dorian O'Kelley. As this court has repeatedly recognized, the complete denial of an opportunity to be heard on a material issue is a violation of due process that is never harmless error. In the court below, the district court denied Mr. O'Kelley the two bedrock components of due process, notice and an opportunity to be heard, when it sui sponte dismissed six of his constitutional claims as insufficiently pled under Rule 2c of the habeas rules. Can I ask you a quick question? So the state says, look, you got plenty of notice from the face of the rule itself. You don't deny, I assume, that the rule provides clear notice that pleading of specific facts is required, right? I mean, 2c is clear, Isabel. How about that? Yes, Your Honor. Rule 2c does state, and I'm sure Your Honors are well acquainted with the text of the rule. It says that the petition must state facts supporting each ground for relief. But the reason that this does not supply sufficient notice for several reasons. One, just as a practical matter, as a panel of this court expressed concern in Williams, this is not a self-explanatory standard. It's not a black and white rule the same way that a filing deadline is. Mr. O'Kelley was certainly on notice based on Rule 2c and this court's case law that he must fact plead, that he must meet a heightened pleading requirement. However, there is nothing within the text of the rule that dictates the quantum of facts required. And as the Williams panel, again, expressed concern, it's an objective legal standard that involves some inherent subjectivity in its interpretation and application. Different attorneys preparing petitions, different district courts evaluating them may reach different conclusions about whether the same pleading meets Rule 2c standard. I mean, I don't guess you disagree. Like Borden, like while maybe technically indicta is a pretty full-throated analysis of what 2c requires and then even what Rule 4 requires as a sanction. Now, I'm not convinced to the core of my being that Borden got Rule 4 exactly right, but Borden did say that about Rule 2c. I mean, it went chapter and verse about what fact pleading is. It's more than Rule 8. And then it said about Rule 4, and it tells you what's going to happen to you if you don't. You're going to get sua sponte, bounced. So how do you overcome Borden? Certainly, Your Honor. I'll first address the portion of your question that relates to Borden before addressing the interaction between Rule 2c and Rule 4. So Borden, as the Williams panel acknowledged, Borden's discussion of the federal habeas rules was indicta. It wasn't necessary to the holding of that case, and that wasn't the question that was directly before the court in that case, as Your Honor has just stated. Addressing the relationship between Rule 2c and Rule 4, they're distinct rules. As set out in quite some detail in our briefing, this is made clear by the fact that the Rules 2 and 3 were amended in 2004. And the advisory committee's notes make clear that the rule was amended to bring it into conformity with the federal rules of civil procedure and to actually previously the rule permitted a district court to dismiss based on a Rule 2c deficiency or a Rule 2 deficiency. The rule no longer permits that. The court is now required to accept an allegedly defective petition, a petition that fails to comply with Rule 2 in any form, and to require the petitioner to submit a corrected petition. Rule 4, in contrast, is cited as the source of the court's sua sponte dismissal authority. The advisory committee notes to Rule 4 and courts quoting that language, including our own court in Paez, as well as other circuits, have focused on the fact that Rule 4 is designed and intended to equip the district court to dismiss a petition or a claim that is frivolous on its face. See, I mean, like, it's interesting. Like, I actually think you're probably right about that as an original matter, what the language of Rule 4 kind of like was ordinarily understood or would ordinarily be understood to be getting at claims that are frivolous on their face. But Borden sort of interprets it in a different way, right? I mean, Borden doesn't say that. And then it says, you know, Rule 4 of the 2254 rules puts the petitioner on notice of what is likely to happen if his petition fails to comply with the fact-pleading requirements of 2C and 2D. So it seems to take that language in Rule 4, which might on its face be about frivolousness, and say, no, no, it's actually about fact-pleading, a fact-pleading failure. Certainly, Your Honor. And I think Borden needs to be reconciled and the rules need to be reconciled also with Day, and this is an issue that the Williams panel grappled with. There would not be a reason for the U.S. Supreme Court to hold in Day that a court must provide notice and an opportunity to be heard if the rules alone were sufficient. Right. I mean, isn't there a distinction between the rules telling you as a general matter what you must do and the kind of notice that you're seeking, which is to say, basically, look, we didn't know that anybody thought we hadn't met these rules, right? So there's, you know, you knew what the rule was, but you're seeking notice that you have to kind of defend yourself as in having met the rules. Is that the right way to think about the distinction you're drawing? I see the distinction you're drawing, Your Honor. And if I may speak to this notice requirement in a little bit more detail. I mean, let me just ask, what is the notice that you think you have to get? Yes, it's actual notice. Of what? In the language of the Williams panel, I think that decision said it best. Actual notice from the opposing party or the court that the pleading or any giving claim is allegedly deficient. So somewhat relatedly, I was looking at the, excuse me, the briefing order in this case, and it says the court also concludes the petitioner will file the initial brief regarding the issues of procedural default because he will have the final opportunity to respond to any unforeseen arguments subsequently raised by the respondent in his reply. Obviously, it does refer to procedural default there, but it also is talking about the ability and the opportunity to respond to any unforeseen arguments that are raised by the respondent. Is that the kind of language that might have suggested to your client that there would be an opportunity to address any arguments that would result in dismissal? I'm glad Your Honor raised that. I think that's exactly the way to read that language. You're absolutely right. So as in, similar to the case in Williams, the parties have, the cases have nearly identical procedural histories. In both cases, you have this somewhat extensive litigation over the scheduling order in the case. And as Mr. O'Kelly was litigating in opposition to the state's proposed scheduling order, in his case, one of the issues he raised was that the warden's proposed omnibus order would require him to shoulder the affirmative burden of essentially anticipating the warden's procedural defenses to his habeas petition. And Mr. O'Kelly in the court below argued that this was out of step with federal law. The district court, as you highlighted, seemed to acknowledge that in its scheduling order that it ultimately adopted. And addressed Mr. O'Kelly's concern by, as you said, focusing on the fact that while Mr. O'Kelly would be required to brief these procedural issues first, he would have the opportunity to respond in his reply brief to any of the defenses or challenges to his petition that the warden raised. Unfortunately, as to these six subclaims, as your honors know from reading the briefing in the case and reviewing the record, that opportunity never materialized. Because while the warden raised a Rule 2C issue in his procedural default brief as to over 30 of Mr. O'Kelly's subclaims, similar to as was the case in Williams, as to these six specific subclaims, no Rule 2C challenge was issued or the warden otherwise conceded that the claims were properly before the court for merit. So that's why you say you didn't get notice that, you know, the complaint allegedly failed to meet the standard. Here's a question I have for you out of your reply brief. So in your reply brief, you cite a series of cases, including this case called SIRTAN, that stands for this rule. This is quoting from the case. Prior to dismissing an action on its own motion, a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond. And then it goes on. An exception to this requirement exists, however, when amending the complaint would be futile or when the complaint is patently frivolous. Do you have any problem with us just adopting that rule and applying that rule in the habeas context? That an amendment should be granted in the absence of futility. No, listen to me. This is what we said in SIRTAN. Prior to dismissing an action on its own motion, a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond. An exception to this requirement exists, however, when amending the complaint would be futile or when the complaint is patently frivolous. Thank you, Your Honor, for restating. I respectfully, that's out of step with day and with the cases applying day in PIAS and our own court as well as... Do you disagree with your reply brief? That's what you said in your reply brief. You wanted us to do... In the civil context, yes. That's what SIRTAN says. In the context of a habeas petition, and again, the underlying merits of Mr. O'Kelly's claims are not at issue here. It's the sufficiency with which they were pled. That was what he never had an opportunity to address. One step beyond that. No, please go ahead. Just to be clear, what is the rule you want us to adopt? What notice has to be provided to you? Actual notice of the... That... That the specific claim or subclaim is allegedly deficiently pled. Okay. And an opportunity to respond to that challenge. Okay. And there is no exception, you think, to that requirement? No, Your Honor. Okay. So what if the habeas petition says, I am Satan and I want the warden to turn the sky green? Thank you, Your Honor. I think that takes us out of the universe of a Rule 2C issue, and now we're in a Rule 4 frivolous on its face issue. So if it's frivolous on its face, then you don't have to get notice? I think that's a distinct... I would characterize that not as an exception to the requirement we were just discussing, and more appropriately classified as part of the court's dismissal authority under Rule 4. So I'm a little puzzled because I would have thought you would have bear-hugged the standard that Judge Brasher just read to you. This is what we do in 12b-6. How about here? I would have thought you would have been like, sounds good, because that is actual notice and an opportunity to replead. And the only thing that's different, and it sounds like what you don't like, is the possibility of an exception. Is that right? I think if Your Honors are contemplating adopting the rule in these circumstances, I do think it appropriately fits more, certainly, than what occurred in the court below and the position that Respondent has taken. I don't believe that the case law supports an exception based on day, but we would not take an issue with a futility exception on the facts of this case. I mean, to be clear, in day, what the Supreme Court said, the actual question in day, was whether this affirmative defense could be raised sua sponte, right? That was the question they were answering? Yes, Your Honor, you're correct. So they weren't answering a question about what kind of notice you had to get or anything like that. That was just a line in the opinion saying, of course, they'll get some notice before there's a ruling. So, Your Honor, the court in day recognized that as a bedrock component of due process that is embedded within the habeas rules. This was echoed in the panel's decision in Williams. And there is a somewhat meaningful discussion of both the notice and opportunity to be heard requirement prior to sua sponte dismissal, as well as instructions to the district court prior to sua sponte dismissal to consider the prejudicial impact that a delayed focus on a technicality would have. But just to be clear, all of that occurred in the course of a decision about an affirmative defense, right? Do you have any cases that have extrapolated day to a sort of a fact pleading scenario? I mean, do you acknowledge some differences between a failure on the face of a pleading and an affirmative defense that is wholly within the state's control to waive, assert, whatever? Scalia kind of went crazy about this in his separate opinion in day. And also, like, the facts are sort of more firmly within the state's control. Here it seems different. Like, this was kind of like your responsibility to get the case going in the right way. Day is different. Now the case is going, and now can the district court sua sponte dismiss on an affirmative defense? Certainly, Your Honor. I do acknowledge the distinction for reasons that I hope to explain. I don't think it's meaningful in resolving the error that occurred in this case. So certainly you have what are traditionally conceptualized as affirmative defenses, including those listed in Habeas Rule 5, of which timeliness is one. However, before addressing the case law, as a practical matter, Rule 2C effectively functioned as an affirmative defense in this case in the way that the warden relied upon it. It's in its procedural default briefing. As was just discussed, the warden raised that issue as to several of the claims. Again, this is three years after Mr. O'Reilly filed his initial Habeas petition in April of 2015. Before then, no Rule 2C or no pleading sufficiency issue had been raised. And then you have the court in its procedural default order ultimately relying on Rule 2C and dismissing these six claims. The case law similarly supports, again, as the Williams panel acknowledged, these requirements applying with at least as equal force in the Rule 2C context. To counsel's knowledge, there is no published appellate decision identifying the specific ways that these due process components should be applied in the Rule 2C context. Likely because standard practice around the country, courts are complying with due process. They are providing notice and an opportunity to respond prior to submission. Can I ask you one further day question that just sort of gets to this potential distinction between pleading failures and affirmative defenses? So in the relevant passage of day, the Supreme Court cites to a Second Circuit case called Acosta. Do you remember this portion of day? I'm not trying to—this is not a quiz show. I'm not trying to trip you up. So the court says, of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions. C, Acosta, Second Circuit case, McMillan, Fourth Circuit case. So the portion of Acosta that the Supreme Court cited there says this. Where the dismissal is based on procedural grounds, i.e., failure to show cause why the issue was not raised in an earlier petition, the district court must provide notice and an opportunity to be heard prior to the dismissal. Where the dismissal is based on the merits, i.e., lack of actual prejudice, no prior notice is required. So why doesn't that suggest that the Supreme Court was kind of like homing in on this distinction between facial pleading failures, which run to the merits of the petitioner's claim, and an affirmative defense, which is within the state's control? Thank you, Your Honor. And I think as Your Honors have raised, Day wasn't specifically confronting this question. It was incorporating these basic due process components as essentially a given in the habeas context. So I don't think that we can discern anything meaningful by the court's citation to Acosta. I think Acosta is also significant because there the court concluded that this type of burden-shifting approach, which would require a petitioner to affirmatively address challenges that had yet to be raised by a respondent, is not contemplated by AEDPA and the habeas rules. Remind me, was Acosta an affirmative defense case or a pleading failure case? Acosta concerned an issue that was more traditionally viewed as an affirmative defense. Yes, Your Honor. That, I guess, is my concern, is that there's a whole lot of case law out there about no sua sponte, sort of without notice dismissals based on affirmative defenses, and essentially nothing out there sort of crossing that divide from affirmative defense to a facial pleading failure. Yes, Your Honor. There is limited case law because the precise error that occurred in the court below has not occurred frequently. To counsel's knowledge, this is the only pending federal habeas case where this issue remains pending that has arisen from the Southern District. And if I could just draw Your Honor's attention, I know there's a case that we've cited in our briefing, Race v. Sammonson, from the Ninth Circuit just last year. And this, similar to Dey and Paez, was a timeliness sua sponte dismissal, but I think there's some language that the court uses there that is very instructive as to this issue. And the court, similar to our circumstances there, the respondent had urged the court to dispense with the notice and opportunity to be heard requirements for reasons that are not relevant to the issue before Your Honors. But the court there said that they declined to create an exception to the general rule that notice and opportunity to be heard must be provided prior to sua sponte dismissal. That's exactly the position the warden has taken here. The warden seeks to carve out Rule 2C from the Due Process Clause. And there is no basis from that as a practical matter based on the case law. This is a general rule of uniform applicability embedded within the habeas rules, irrespective of the basis for dismissal. Our court has acknowledged in Rodriguez v. The Florida Department of Corrections, also cited in our briefing, that the protections afforded a habeas petitioner do not vary based on whether the dismissal is ultimately on the merits or based on a procedural or technical ground. And just as a final note on this, we've highlighted several of these cases in our briefing. But for this reason, you see courts uniformly applying the notice and opportunity to be heard requirement in a variety of contexts. We discussed race. That was timeliness. Cases we've cited in our briefing, Preto v. Quarterman, that was a Fifth Circuit case, procedural default. You have Etheridge from the Second Circuit in 2022, also cited in our briefing, that was a stone bar or a bar to relitigating a Fourth Amendment claim in federal habeas proceedings. You have Lugo v. Keene from the Second Circuit, which involved abuse of the writ. You have Boyd v. Thompson from the Ninth Circuit, which involved procedural default and exhaustion. And Dansby v. Hobbs, a 2014 case from the Eighth Circuit, is also instructive that this was another procedural default case. And there, the court specifically asked whether Day should likewise apply in the procedural default context as with timeliness and concluded that it did. And so, again, yes, Your Honor is correct that there is minimal to nonexistent case law on the way due process should be interpreted and applied in the Rule 2C context specifically. But the overwhelming weight of authority is that this is a bedrock. These are bedrock due process components. But any time a court intends to sua sponte dismiss a habeas petition on any grounds, these requirements must be afforded to the petitioner. Can I ask you why? So, I mean, I tend to agree with you, I think, about the general requirements of due process here. But I'm having a hard time with the fact that you filed your motion to amend and the district court said, no, I'm not going to let you amend. And you filed a motion to reconsider and the district court wrote a fairly long order explaining why the district court thought it was right to dismiss. Why doesn't that satisfy due process? Thank you, Your Honor. A motion for reconsideration as the Williams panel concluded and as our sister circuits from the Second, Ninth, and Fourth Circuits have uniformly concluded does not provide an opportunity to be heard which complies with due process. The Supreme Court in Matthews has described this fundamental requirement as an opportunity to be heard in a meaningful time and in a meaningful manner. That language is important when evaluating a motion for reconsideration because it's specifically due to the limited scope of review at that stage. So that would be true if it were a motion to reconsider a final judgment, but this is a motion to reconsider just a piece of paper that was filed by the district court. And the district court recognized that. It said, look, I can do whatever I want to. So, Your Honor, I would disagree with the characterization that the district court felt that it could do whatever it wanted to. It quoted language specifically. And this is docket entry 122 at page 6. Language that is well established in our case law addressing the standard for granting a motion for reconsideration stating that such motions should typically only be granted given a change in the intervening change in the controlling law, the introduction of new evidence to address clear error or to prevent manifest injustice. And also that such motions should not be used to re-argue issues that could have been addressed earlier in the proceedings. This is language essentially identical to the language that the district court used in its default order or its order denying Mr. Williams motion to reconsider and to amend. It's also nearly identical to language quoted by the second, fourth, and ninth circuit decisions that we've cited in our briefs where this stage of the process was found to be an inadequate opportunity to be heard, sufficient to comply with due process. So, there's a couple of things to unpack, I think, in your statement. Do you want to say that motions to reconsider just inherently do not satisfy due process? Or are you saying that motions to reconsider where some kind of heightened standard is applied don't satisfy due process? I think it's about the issue of the standard that is applied, Your Honor. And you could conceive, I suppose, of a court applying a more liberal scope of review. That is not what happened here, and that is not what happened in the other cases in which this has been found to be insufficient. I think the meaningful time, meaningful manner language from Matthews is important because it's less about the precise timing and less about the form that notice and an opportunity to be heard takes, and more about the petitioner being entitled to at least one meaningful opportunity to be heard, which is something that Mr. O'Kelly did not receive in these proceedings. Can I ask you just one more? I know you're running out of time. It's okay. You can finish the answer to the question. Would you just respond to this language in Paez? I know you know it well because both sides, plenty in Paez to go around. Both sides are citing Paez. But one of the things that the court said in Paez was, here Mr. Paez was provided ample notice and an opportunity to explain why his petition was timely in his petition and then again in his response to the magistrate's report and recommendation. Two questions, I guess. One, what about the in his petition part of that? Because it sounds like you definitely had the same opportunity that the court seemed to recognize in Paez. Like, hey, you read the rules. You had your chance in your petition. And then it said, and then again in this subsequent stage of the proceedings there, responding to the magistrate's report and recommendation, here maybe it's the motion to reconsider, the effort to amend the complaint, but you had sort of like a second bite at the apple. And in Paez the court seemed to think that was fine. So, Your Honor, my understanding of Paez is that, as you mentioned, there was the forum petition and then there was an opportunity to object to a magistrate's report and recommendation. Yeah, so the court said he had his notice and opportunity to respond, first, in the forum petition, and then second, again, the court said, in the objection to the magistrate's report and recommendation. Why don't we have a, it's not on all fours, but sort of a parallel procedural history here where you had your opportunity first in the petition and then again at some subsequent stage maybe it's called a motion to reconsider or an effort to amend or whatever. Why isn't that sort of the same as Paez? I think it's very different, Your Honor, because the courts, including, as you mentioned, Paez and N'Dea, recognize a report and recommendation and the opportunity to object as sufficient to comply with due process. That's not true with the motion for reconsideration. So what do you think, and I promise then I'll let it go, but what do you think about the first part of this, the first part of the disjunction, or maybe it's a conjunction, had the notice and opportunity to be heard first in the petition and then again in the response to the magistrate's report? Your Honor, I don't think we can read, if this is what Your Honor is suggesting, that first, second, as an implicit recognition that the petition itself is sufficient. We don't have any other authority to suggest that, and that was not directly addressed in Paez. The only authority construing that has been Williams, and the panel there reached the opposite conclusion, that the proceedings in Paez complied with due process precisely because there was this additional opportunity. Beyond the petition itself, the panel explicitly concluding that they declined to broadly read the habeas rules as requiring a petitioner to respond to a yet-to-be-asserted argument about insufficient pleading. And this yet-to-be-asserted language, I think, is extremely important and goes to Your Honor's concern, I believe, about affirmative defenses, because whether or not something is categorized in the rules or otherwise as a traditional affirmative defense, it's an argument that Mr. O'Kelley or Mr. Williams in that case previously had no notice of and no indication that they would be required to respond to. And this is why the petition alone is insufficient, and this is why the case law declines to hold petitioners accountable for anticipating challenges like this in the text of their petitions themselves. So just to follow up on the Paez point, Paez was a timeliness issue, right? Yes, Your Honor. And if I recall correctly from Paez, the problem there was that the petitioner actually put dates in his petition that said that his petition was untimely. Check on that. Yes, Your Honor, I think that's correct. All right, thank you very much. You've reserved five minutes for rebuttal. We'll hear next from Mr. Thompson. Thank you, Your Honors. May it please the Court. Habeas Rule 2 instructs a petitioner to plead specific facts in support of his claims. And to quote this court in Borden, Rule 4 puts the petitioner on notice of what is likely to happen if he does not, namely, sua sponte dismissal of inadequately pleaded claims. Given that double-barreled notice, a habeas petitioner's opportunity to bring well-pleaded claims is in his petition. But regardless, Mr. O'Kelley got more. A motion for reconsideration and an appeal to this panel. Can I ask you to respond to Judge Brasher's question to your adversary about Sertan? I have the same question. In the 12B6 scenario, it seems like we've said, look, absent extraordinary circumstances, my paraphrase, you're entitled to notice and an opportunity to do better. And outside Sertan, like initially I was somewhat skeptical that Sertan is really a rule of due process. Maybe it's a rule of just sort of like the federal common law of appellate practice or something. But there are some cases that refer to this redo opportunity vaguely in due process terms. And so if on the civil litigation side, why not on the habeas side? I understand, Your Honor. I'm glad to have an opportunity to respond to those cases somewhat ironically, given the subject matter of this case. So I think there are a few good reasons why Mr. O'Kelley did not frame his appeal around those cases and why the per curiam and Williams didn't cite any of them. First, I was going to mention the same point Your Honor did, just to throw a caution flag on this whole idea that this is a due process line of cases. I'm not aware of any case, they certainly haven't cited one, that's actually applying Matthews v. Eldredge or any other due process standard to identify the rule that is identified in these cases. So I think there's a reason to think twice and maybe think again before kind of reflexively expanding this to the habeas context. Setting that initial concern aside, I think there are a few reasons why you shouldn't extend it to the habeas context. First of all, I think it would be in serious tension with prior precedents of this court. You mentioned Borden earlier. My colleague said it was DICTA. By their standard, Day is DICTA 2 on this point. Also McNabb. McNabb says the failure of a district court to give notice to the parties that it would side the merits of the claims without briefing does not rise to the level of a due process violation. I'm not sure how those two rules could coexist side by side. Tell me if I've got this right about McNabb. McNabb in some ways seems worse than this case because the district court there kind of sucker punched the petitioner by saying, like, don't worry, I'll give you an opportunity to brief it, and then didn't. Yes, that's my understanding, Your Honor. On the other hand, that's kind of what the district court did here too. I mean it did use the term – let's see. I read the sentence before where it used the term procedural default, but it also did say that it would give the final opportunity to the petitioner to respond to, quote, any unforeseen arguments subsequently raised by the respondent in his reply, and then it later said, after the court enters an order concerning procedural default and what issues it will review on the merits, petitioner shall have 45 days to file a final brief on any remaining claims, which suggested that the court was going to evaluate the pleadings at that point based solely on what the state brought up. So a few points on that, Your Honor. I think to the extent we're concerned about the equities here, I would point out that in his reply brief, Mr. O'Kelly didn't respond to any of the arguments about inadequately pleaded claims. He focused completely on the procedural issues, even on the claims that we identified as inadequately pleaded. But he's not contesting any of those. Well, he's contesting three of them. We disagree about how many fall into this category, but yes, Your Honor. I mean it's one thing to – Look, you guys gave him notice when you suggested that they were inadequately pled, but it's something entirely different when you conceded that they were properly pled. And, well, you didn't contest it when you contested other things. Let's say that. Thank you, Your Honor. So it kind of implicitly suggests that you conceded that they were properly pled. And then the district court also suggested it was going to make a determination on, you know, procedural default issues and then give an opportunity for merits briefing and sort of pull the rug out from under the petitioner before the petitioner had an opportunity to address that. So I understand Your Honor's concerns. I don't think that the court's compliance with Rule 4 is properly before this court on appeal given the scope of the certificate of appealability. So I think we kind of have to take the timeline of its application to the habeas rules as it comes to us. And, look, the state is usually the party that is in these habeas cases is urging expedition. We're usually the ones saying, let's get this done as quickly as we can. And then it's petitioners like Mr. O'Kelley in this case who are asking for these extended schedules so they can engage in discovery and so they can seek evidentiary hearings so that they can try to put more meat on the bones of their claims. We went through all that here, and those efforts to put more meat on the bones from his perspective were unsuccessful. That's sort of true, and you might ultimately be right about that. But getting back to a question one of my colleagues was asking about, if we look at DE-122, it's very clear the standard that the court applied. It said, in his motion for reconsideration, Petitioner neither contends that there has been an intervening change in the law nor that there is newly discovered evidence that would cause this court to reconsider its prior ruling. That's clearly the standard it was applying. Then it says, as a result, this court must decide whether Petitioner has shown that the court committed clear error in dismissing Petitioner's claims as insufficiently pled or unexhausted. And so that is a different standard than he would have faced had it initially been brought to his attention, and then the court reviewed whatever it was that he responded to at that point. So, Your Honor, I think there is some internal tension in the court's order. In footnote two, the court says, I'm rejecting the state's argument that the higher standard under Rule 59 applies and I'm actually going to apply the Rule 54 standard. And then if you look to when the court is actually applying, is actually reviewing its previous order. But why should the state get the benefit of the doubt? I mean, you've just conceded that, you know, there is, we could call it internal tension. I would say outright disagreement with itself about what it was doing. I understand that. I would point to the court's actual analysis in this question rather than the table setting and the standard review. And it's just going through this court's decision in Hitson, explaining what the fact standard is. And it's not saying, you know, he's raised some concerns, but given the high standard, I'm not going to change course. It just says, look, this doesn't meet the standard. And if you look at the claims, there's no way they meet the standard. They're just kind of asserting errors, asserting ineffective assistance. There's no meat on the bone anyway. So I don't think that moves the needle much. It didn't matter to the panel majority in Williams. And I think my colleague rejected this idea that the standard review necessarily controls whether it is an adequate opportunity or not. Can you just, I want to make sure you finish your answer to, I think it was Judge Newsom's question, about whether the sort of the Rule 12 standard that we apply when you want to sue is plenty to dismiss in a civil case. Did you finish your answer? I have one. I've got a few more answers to that one. So I've mentioned precedent. Specifically, and I'm not pointing to Borden on this purely for precedent, but Borden provides an explanation for it. The Hades Rule requires notice of both the pleading standard and the sanction for noncompliance. In Jefferson, which is a case they cite in their reply brief, which seems to kind of be the font of this quasi-due process rule, the plaintiff had neither because the district court dismissed the claim sui sponte pursuant to its, or invoking its unwritten inherent authority to dismiss frivolous claims. So that case is kind of doubly differentiated from this case. Even under the Federal Rules of Civil Procedure, which applied in Sertain, unlike the Habeas Rules, which again give petitioner express notice of both of those things, all Rules 8 and 12 do is inform a civil plaintiff that his claims might be subject to a motion to dismiss. There's no screening procedure in the FRCP. And then, in fact, this court in American United Life Insurance has said that the Supreme Court, quote, has declined to pass judgment on the permissibility of sui sponte 12b6 dismissals at all. So we have two different situations here. Under the Federal Rules, it's not even clear that a court has the authority to just kind of sui sponte dismiss for failure to state a claim under like Twombly and Iqbal. Here, the Federal Habeas Rules are telling a petitioner, here's the standard, and your claim will be screened if it fails to meet it. I have a few more points of distinction. I think the Habeas context is distinct in more fundamental ways. For one, unlike an ordinary civil plaintiff, and this is, again, quoting from this court in Borden, unlike a plaintiff pleading a case under Rule 8, a Habeas petitioner ordinarily possesses or has access to the evidence necessary from the start. The other thing is in the Habeas context, it's very rarely your first bite at the apple. You've had the chance to develop constitutional claims on direct appeal and in the state postconviction process. And then finally, I think stepping back, the consequences of O'Kelley's kind of categorical rule, which I'm not sure my friend on the other side actually embraced when your Honor presented it, but the consequences I think would be massive for PLRA and other contexts in which Congress has or will one day want to put in place a screening procedure. I think the upshot of their argument is that Congress simply can't do that. It always, even if it writes into the rules or into a federal statute, the judge is going to screen this, and if it doesn't meet the standard, it's out. There's kind of this implicit constitutional amendment to any provision like that that says, well, Congress actually can't make that policy choice. State legislature actually can't make that policy choice. Even when it has, you've got to go through this round of briefing that matches exactly what this court in McNabb said you don't have to do. So if you need one more, I think federal Habeas is different in that a federal Habeas court always has the background discretionary authority to deny relief, even after a petitioner manages to jump through every AEDPA and precedential hurdle in his path, making federal Habeas relief a disfavored form of relief, not comparable to the federal rules of civil procedure and ordinary pleading. Does your kind of front line distinction there, or I don't know if it was your primary or secondary. There's a lot of lines, I'm sorry. It might be the secondary, but you said one way in which sort of the Rule 12 dismissal is different from a Habeas dismissal is that unlike Rules 8 and 12, the Habeas rules specify not only the standard but also the sanction, right? And for the sanction part, are you relying on the language in Rule 4 that we were sort of talking about earlier? If it plainly appears from the petition in any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition? That's what I'm relying on. Okay, so I guess, frankly, before I read Borden, when I was just reading the rules, when I read that, I was like, I'm not sure about that. That sounds like substantive frivolousness to me, like I'm entitled to Habeas relief because I am Satan and the moon is made of green cheese or whatever. But then I read Borden, and I was like, wait. Borden seems to read that language as a rule of fact pleading sanction. So does your distinction of the Rule 12 scenario from this scenario depend on the Borden, what I'll call the Borden gloss on Rule 4? So Borden is a precedent of this court, and I'm not going to run away from it because I think it's very helpful to us here. But I also think it's correct. The language of Rule 4, so there is a qualifier in that it must be plain, right? The lack of qualification for Habeas relief must be plain. So there's some kind of built-in standard there. But it doesn't say anything substantively about the reasons why your claim could be screened under Rule 4. It simply says if it plainly appears that the petitioner is not entitled to relief in the district court. So I would struggle to read into that this idea that kind of patent facial frivolousness is a reason that you can be screened on Rule 4. But if your Habeas claim is my constitutional rights under the Sixth Amendment and Strickland were denied, period, that is a Rule 2C problem, not a frivolousness problem. But that definitely seems like the kind of claim that could be screened out under Rule 4 because it's either baseless or it's a fishing expedition or the petitioner is holding something back that he should be telling the court. Well, and I guess I'll just sort of front this. It's really for your benefit for rebuttal. But I think to me there's another portion of Paez that gives you a bit of a tailwind. Judge Martin's decision in Paez also says this. It says if a petition does not set forth a sufficient factual basis for Habeas relief, the petition is legally deficient on its face and the district court must dismiss it. That in a Borden kind of way seems to me to kind of mesh factual pleading insufficiency with legal insufficiency. I agree with that, Your Honor, and I also would have real concerns about a rule that requires a court to engage in this kind of fine line drawing about when the problem with a claim is insufficient pleading or something more substantive about frivolousness or whether there's kind of gradients within that where it's, you know, this claim is insufficiently pleaded, but is it so insufficiently pleaded that I can screen it on Rule 4? That's a question for the kind of plainly language that is embedded into the way Rule 4 works. I don't think it should come in over the top as this additional kind of due process question that the court actually has to engage in. Otherwise, I think we're kind of de facto constitutionalizing the procedure that Mr. O'Kelley wants here. Your Honor's had a lot of questions from my colleague about the distinction between these procedural affirmative defenses and facial fact pleading. And my friend on the other side rattled off a long line of cases that all have in common that they were affirmative defenses in the procedural mold. And I think that is also relevant to this question Your Honor had about SIRTAN. The fact that all of these lower courts, including two that the Supreme Court in Dey cited to justify its notice and opportunity rule, are discussing this requirement in language that links it expressly to the ways in which affirmative defenses are litigated. All of that language is so much wasted ink if the real rule is that SIRTAN's rule applies just across the board to the habeas context. I think adopting that reflexively would be somewhat disrespectful to the careful analysis that all those other courts are engaged in when they're saying, to quote one of O'Kelley's favorite cases, Etheridge from the Second Circuit, such dismissals require prior notice and an opportunity to be heard because they are adjudicated based on factors that are usually outside the record. That because language is pointless if there's this background due process rule that entitles you to extra notice and opportunity whenever a court sua sponte dismisses a claim for any reason. Well, but isn't, I mean, part of I think the SIRTAN standard is that you don't have to give notice if it would be futile to amend or it's just patently frivolous. So in PIAS, for example, I mean, I'm almost 100% certain the facts of PIAS are this. The petition itself has dates in it that establish that the petition is untimely. Why would you give notice and an opportunity to amend the petition? Why would you have briefing on that? Like the petitioner is telling you that his petition is untimely. That seems to be different from a situation where, like you say, someone files a petition that says, my rights were violated under the Sixth Amendment because my lawyer didn't do a sufficient, you know, job in finding whatever, some kind of evidence. Isn't there a distinction there? So there are, there is the rare civil complaint or habeas petition where a petitioner pleads himself out of court by essentially showing on the face of the complaint that a affirmative defense applies. I don't think that's what any of these cases are talking about. No, but I guess my point is, like, even under Day, I don't think that the Supreme Court's, I think it's probably dicta, but their statement in Day, I don't even think the Supreme Court is suggesting that when a person files a habeas petition with the dates on it establishing that it's untimely, that there has to be notice of that. I don't even think the Supreme Court is suggesting that, but that's not what we have. That doesn't seem to be this situation, I guess is my point. Sure. I think, I think there are, what the courts, including Day and these other courts, the courts Day is citing really, not Day itself, are talking about, is the mind-run way that procedural affirmative defenses come into a case and are litigated. And it is pointing to the way that typically works, and that's kind of the hook that it's hanging its hat on for this idea that you need extra notice and opportunity to be heard. That's my point. And my point is that that hook doesn't exist with respect to facial pleading. And the fact that they're having to rely on that hook in the habeas context tells us something about how plausible it is that this kind of certain line of cases can just be imported into habeas, you know, without grappling with the distinctions between the ways the rules work, between habeas litigation and civil litigation more broadly. Finally, this kind of goes to some of the questions Your Honors asked about whether Rule 4 was complied with here. I think perhaps sensing some weakness on the due process issue, Mr. O'Kelley is arguing for the first time that this court should vacate the district court's judgment on other reasons, compliance with the rules reasons. And those issues are just not properly before this court. In his motion for a certificate of appealability, Mr. O'Kelley specifically hung his hat—hate to use the metaphor again—on Williams, where he said that the issue in Williams was nearly identical and that this court should grant a certificate of appealability because reasonable jurors could disagree. And when this court granted a certificate of appealability, it cited Williams and the disagreement between the panel majority and the dissent to justify the question that Mr. O'Kelley had framed got across the bar for a COA. I think that means that these other issues, setting due process aside for why there might be some issue with the district court's ruling, are not before the court. The same goes for the question of leave to amend. And this is a distinction with Williams. In Williams, this court granted review on two different COA questions. The second of which was whether there was a denial of due process with respect to the denial of amendment. That issue was not presented by Mr. O'Kelley in his motion. It was not granted by this court in its COA order. Yeah, I mean, on the motion to amend, that seems—I mean, he got exactly the right standard on motion to amend that he would have gotten had he filed the motion to amend— I mean, motion to amend in response to some, like, show cause order, right? There was no difference in the way the district court treated the motion to amend, was there? No, I think—look, one judge may disagree with another on whether the court got it right, but the question was framed correctly. The law was framed correctly. The analysis seems entirely straightforward to us. And I think Mr. O'Kelley didn't seek review of that question framed either as a Rule 15 question or a due process question because he got what he wanted. He had what he needed, he thought, in Williams, which addressed only the dismissal question and said, because we've addressed the dismissal question, we don't need to address the amendment question. So I think there was a strategic decision there by Mr. O'Kelley to focus on dismissal. And because of that, dismissal is the only thing in front of us. The fact that the court denied leave to amend is not in front of the court. And I think that does take some of the wind out of the sails of this kind of fairness question about the delay and the briefing schedule and why he didn't have a chance to amend the claims. Could you tell me what's going on in Williams right now? Do you know what's happening? I do not, Your Honor. I'm not prepared to answer that.  I think, yeah, I don't want to get it wrong, so I won't say. If there are no further questions, I'll ask the court to affirm. Thank you, Your Honors. All right. Thank you, Mr. Thompson. Ms. Kayembe, you have five minutes. Thank you, Your Honors. I would like to address your question, Judge Brasher, first about what's going on in Williams. So after the panel issued its decision, the district court issued a show cause order directing Mr. Williams to address the sufficiency of his pleadings. Mr. Williams did that, simultaneously filing a motion to amend, which the warden, critically in that case, did not oppose. Mr. Williams was permitted to file an amended petition, and the case is now proceeding in response to that amended petition, pursuant to a scheduling order that is very similar to both the scheduling orders that governed each of these cases in the first instance, with the critical exception that Mr. Williams has finally been afforded notice of the alleged deficiency and an opportunity to respond and to amend. Mr. O'Kelly is entitled to the same opportunity. I would like to first address the rule that Your Honor also highlighted and opposing counsel was also discussing from SIRTAN, and that is if Your Honors are inclined to apply that rule, that notice and opportunity with an exception for futility or frivolousness, if Your Honors are inclined to apply that rule, we surpass that threshold. Futility and frivolousness are not an issue with the six wrongfully dismissed subclaims here. The facts laid out to these claims, they're colorable constitutional violations. The facts have been extensively laid out in our briefing. Just to underscore the significance, I'll just draw Your Honor's attention to subclaims 1P and 1Q. Those are those claims related to trial counsel's mishandling of what was arguably the most significant piece of aggravating evidence in this case, a letter proffered by jail snitch Christopher Bowen that was read to the jury by a Savannah police officer immediately before the jurors deliberated as to Mr. O'Kelly's guilt and innocence. The letter set forth a highly sensationalized, highly aggravating account of the crime that was inconsistent with the other evidence that the state presented at trial. Trial counsel made no effort to suppress this evidence based on its unreliability and made no meaningful effort to mitigate its impact on the jury. Had counsel undertook such efforts, they would have learned, as the state habeas record makes clear, that Mr. Bowen immediately upon meeting Mr. O'Kelly at the Chatham County Jail developed a plan to target him because he viewed him as psychologically vulnerable and easy to manipulate. Can I ask you a question? Yes, Your Honor. It just sort of feels like maybe what you're doing is showing like, hey, we could have amended the pleading to make it better. I mean, as to like notice and an opportunity to respond, I'm not really sure that what you're saying now like makes a whole lot of difference. You could look at, you know, sort of any of the claims and say like we could have done more, but that doesn't fix the facial sufficiency of the claims as pleaded. You would just need the opportunity to amend, right? I mean like as we're getting way down into the weeds here about Christopher Bowen, and Christopher Bowen is sort of mentioned in one cue, but is the reason that you're getting into so much detail now to convince us, and you may well be right about this, that if we had had the opportunity to amend, we could have done better? Like this is not frivolous. It's not futile. We could have shown something? No, Your Honor. That's not the purpose for highlighting it. This is to demonstrate that we would easily meet the certain rule of clearing the inapplicability of not frivolous and not futile. Yes, Your Honor. So do you think, I think we've kind of joined issue on this. Do you think the certain rule is compelled by due process? Like certain itself, as I recall anyway, doesn't talk about due process. It just talks about a rule, as I was saying, a federal common law rule of appellate practice and procedure or something, a rule of fairness more generally. There are some cases that seem to sort of like tag the due process base in this line of cases, but none of them, as the Solicitor General points out, really ever do like a Matthews versus Eldred kind of balancing analysis or anything, and it seems like they're really just talking about sort of like due process in the ether, just sort of, you know, sort of fundamental fairness. So do you think the certain rule itself is on the civil side, is compelled by the due process clause? We have no constitutional leeway to do anything other than what we have done in certain. I do think that's correct, Your Honor. I think this notice and opportunity to be heard requirement is bedrock within due process, and whether the cases use the specific words due process, this discussion of notice and on opportunity to be heard always invokes due process. As the warden pointed out in Williams, Day did not mention due process, but it is undeniably these are the bedrock elements that must be provided. That's what the court recognized in Day. That's what the case law we have been citing focuses on. I think it's respectfully to opposing counsel whether Matthews versus Eldred has been specifically applied in that analysis. It is not determinative of whether due process compels notice and opportunity to be heard. Those are the most fundamental requirements, Your Honor, and I do believe it is compelled. All right. Thank you very much, counsel. We'll be in adjournment. All rise.